STATE OF MISSOURI at the relation of E. K. FISCHER, O. E. STUBER, KARL EIMAN, DR. E. C. WUEST, O. C. EIMAN and CHARLES WELTY, Relators, v. L. A. VORIES, Judge of the Circuit Court of Buchanan County.—62 S. W. (2d) 457.

Division Two, June 27, 1933.

*Richard S. Duncan* for relators.

*Brown, Douglas & Brown, Louis V. Stigall* and *Alva F. Lindsay* for respondent.

TIPTON, J.—This is an original proceeding in mandamus to compel the respondent, one of the judges of the Circuit Court of Buchanan County, Missouri, to allow the relators, six taxpaying citizens of Buchanan County, an appeal from a judgment against that county on three thousand one hundred and eleven (3,111) warrants issued by the county. The respondent, before whom the warrant suit was pending, admitted these taxpayers to be represented by counsel and to be heard in the trial of the suit. After the judgment in the suit was rendered, these relators filed a motion for a new trial and an affidavit for appeal. The respondent overruled the motion and denied the relators an appeal. The respondent filed in this court his return. The relators filed a motion for a peremptory writ upon

the admissions and allegations of the return, which is in effect a motion for judgment on the pleadings and, of course, the statements in the respondent's return will be taken as admitted to be true.

The facts as shown by the return are that Harry H. Mohler, as assignee of 3,112 warrants issued by the County of Buchanan in the years 1929 and 1930, filed his petition against the County of Buchanan in as many counts. In each of the counts he sought to recover judgment for the amount of the indebtedness evidenced by the county warrant described therein, with interest from date of protest of the warrant. This cause of action was returnable to the May Term, 1932. On May 4, the county, by its attorneys, filed its answer. Before the beginning of the May Term, counsel appearing for the relators in this proceeding filed a motion on behalf of fifty-five individuals, who claimed to be resident taxpayers of Buchanan County, asking to be permitted to become defendants in the suit of Mohler v. Buchanan County. All of the persons named as applicants in that motion later withdrew with the exception of these six relators. After the filing of the answer on behalf of Buchanan County in this case, these relators then filed an amended application in which they alleged that they were taxpayers of Buchanan County and that certain warrants described in the petition of the plaintiff, Mohler, were unlawfully issued in excess of income and revenues provided for the county for the year in which the obligations were incurred; and that certain other warrants described in the plaintiff's cause were unlawfully issued as evidence of obligations not incurred in writing as required by law; and that with respect to certain other warrants, described in the plaintiff's petition, issued against the Special Road and Bridge Fund of Buchanan County, were unlawfully issued because the contracts out of which the obligations therefor arose were not let upon an advertisement for bids to the lowest and best bidder and upon plans and specifications filed with the County Court of Buchanan County. In that application the relators claimed an interest adverse to the plaintiff Mohler as resident taxpayers of the county, and as their reason for attempting to interfere with the defense by the county of the action brought against it. They claimed that it was their belief that the suit was of a friendly nature and that the defendant did intend to permit judgment to be obtained against it, and that their application was made for the purpose of presenting a meritorious defense in the act.

A hearing was had upon the application. Before it was completed, the respondent judge concluded that neither the plaintiff nor the defendant would be prejudiced by permitting the relators to be heard in the trial of the suit, and made an order to that effect. The suit, tried before the court without a jury, in which the relators participated, resulted in a judgment in favor of the plaintiff on 3,111 counts and in favor of the county on one count of the petition. The

relators in their own name then filed a motion for a new trial which was overruled. Then in their own name they filed an affidavit for an appeal in which they expressly asked the allowance of an appeal on only 154 counts of the 3,111 counts embraced in the general judgment. The county did not file a motion for new trial, but was content to let the judgment stand. The relators did not request that the county appeal the case. The return admitted that the respondent had denied the application for appeal. Other necessary facts will be stated in the course of the opinion.

I. The case of Mohler v. Buchanan County was a case at law in which judgment was rendered only against the county. If the relators are entitled to an appeal in that case, they must be within the provisions of Section 1018, Revised Statutes 1929. The pertinent parts of this section are as follows:

"Any party to a suit aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal to a court having appellate jurisdiction from any order granting a new trial, or in arrest of judgment, . . . or from any final judgment in the case."

Under Section 701, Revised Statutes 1929, "Any person may be a defendant who has or claims an interest . . . adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

The St. Louis Court of Appeals in the case of Kortjohn v. Seimers, 29 Mo. App. 271, l. c. 276, said:

"Our statute provides that any person may be made a defendant who has or claims an interest in the controversy adverse to plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein. [Rev. Stat., sec. 3465.] This means that a plaintiff may make any party thus situated a defendant to the action, and not that any party may insist on being made a defendant to any legal controversy which is likely to affect his interest in some collateral manner. The latter construction would lead to the most absurd results, and results entirely at variance with our methods of legal procedure."

The Kortjohn case has been followed in Browning v. Hilig, 69 Mo. App. 594; Addison v. Dent County Saving Bank, 205 Mo. App. 622, 226 S. W. 322; State ex inf. v. Railway Co. (Mo. App.), 193 S. W. 932; Skinner v. Slater, 159 Mo. App. 589, 141 S. W. 733.

In Addison v. Dent County Saving Bank of Salem, supra, a depositor brought action against the bank to recover deposits paid out of it on checks drawn by plaintiff's wife against his account. Over the objection of plaintiff, the wife on her own motion was allowed to be made a party defendant and allowed to file an answer setting up defenses not raised by the original defendant. No judgment or

relief of any kind was asked by the plaintiff against the wife and the court held it was error to allow her to become a party defendant. It would, therefore, seem to follow that before one is entitled to appeal from a judgment of the circuit court he must be a necessary or proper party having a direct interest in the result of the litigation.

In this litigation these relators came into the case as party defendants on their own motion; the plaintiff's petition did not seek any judgment or relief against them. There was no judgment rendered against these relators, and they could not be affected except, perhaps, if the plaintiff prevailed, their taxes might be increased. Their interest in this litigation was collateral, and these relators were not proper or necessary parties to the cause of action pending in the Buchanan Circuit Court.

The Legislature has seen fit to allow resident taxpayers to question the contracts and obligations of the county under Section 12110, Revised Statutes 1929. The relators attempted to intervene in this case apparently under this section:

"Whenever any fifty resident, solvent and responsible taxpaying citizens of any county in the State shall have good reason to believe, and do believe, that any contract made and entered into by the county court of the county, with any person or corporation, affecting or concerning any public building, lands, moneys or property of the county in any manner whatever, or any extension of any such contract, was not made and entered into in good faith, or for a just consideration, and with due regard for the best interest of the county, or that any such contract previously entered into has not been carried out by the parties thereto in good faith and according to the terms of any such contract, they may bring a suit in the circuit court of any such county, praying that the matter may be inquired into, and thereupon the circuit court shall make a full investigation of the matters alleged, and shall have power to set aside, reform or cause to be enforced any such contract, or any extension of any such contract, as the court shall deem best under the law and the facts."

The section further provides that if the petitioners fail to sustain the allegations of their petition, they shall be responsible for the costs in the action brought by them; and that after the filing of the petition the death, removal or disability of any one or more of such petitioners shall not abate or affect the suit. Originally, fifty-five citizens joined in the application filed in this case for permission to intervene as parties defendant. Before the application was passed upon all but six withdrew. After the defendant, Buchanan County, filed its answer, the aforesaid remaining six citizens filed an amended application for leave to intervene setting up the alleged facts heretofore recited assailing the validity of the county warrants. No effort was made at the trial to show that as many as fifty (the statutory number) of the citizens who joined in the original applica-

tion when it was filed were solvent, responsible, resident, taxpaying citizens. This showing was made only as to the six citizens who joined in the amended application, but the court made no finding as to whether or not these six were resident, solvent and responsible taxpayers. That is as far as the proof in the record goes.

We believe it to be the public policy of the State, as declared by the Legislature in the foregoing statute, that at least fifty resident, solvent and responsible taxpaying citizens of a county should join in any action brought thereunder. The county court is entrusted with the transaction of the business of the county. [Art. VI, Sec. 36, Mo. Const.] To allow one or a few taxpayers to constantly interfere at their will and caprice with the transaction of the county's business by the county court, by the filing of such suits, would be a hindrance to the county and impede the county court in the proper administration of its affairs. The Legislature has seen fit to declare that a respectable number—as many as fifty—taxpaying citizens must join in the action, and they must be "resident, solvent and responsible" and must answer for the costs of the action if they fail. It is true, after the action is instituted if any one or more of the petitioners drop out of the case by "death, removal or disability" the action shall not be affected, but it is not true, in our opinion that the circuit court will acquire jurisdiction of the action unless there are at least fifty signers to the petition of the character and description specified in the statute, at the time it is filed. Neither do we find anything in the statute authorizing the maintenance of the action after the number of petitioners has been reduced below fifty, unless the reductions result from death, disability or removal of original signers. In this case there is no proof whatever that at least fifty of the original fifty-five signers were resident, solvent and responsible taxpayers. Nor is there proof that the forty-nine who withdrew did so because of death, removal or disability. We therefore hold the court had no jurisdiction to entertain the application or the amended application; and that the six citizens who continued in the suit had no right to maintain and had no right of appeal. From remarks of the court appearing in the record it seems the learned trial judge allowed them to participate in the trial only as a matter of courtesy and in view of the assistance he might derive from their efforts in an advisory way, the court insisting that it would do no harm to either of the parties to the main suit, that is, the plaintiff Mohler, or the defendant county.

■ II. The relators must not only be proper or necessary parties, but they must also be aggrieved by the judgment of the circuit court before they would be entitled to our writ of mandamus compelling the respondent to grant them an appeal. In State ex rel. v. Talty, 139 Mo. 379, l. c. 391, 40 S. W. 942, we said:

"But independently of what may be said of the control, duty or power of the courts over property in their custody, no appeal will lie from judgments or orders made affecting the same unless allowed by statute, and by statute appeals are allowed only to those who are aggrieved by judgments, orders or decrees made affecting directly some pecuniary or property rights or interest of the appellant. Judgments or orders that affect or offend merely the taste or sensibilities of a party constitute no legal grievance, authorize no appeal therefrom; nor does the right of an appeal exist in favor of a party aggrieved or *offended by the mere disclosure of facts brought about by the carrying out of an order or decree of court that ultimately may result disastrously to the party*. It would be a most intolerable obstruction to the operations of our courts and a paralyzation of their use if parties having no legal interest in the result of their judgment, order or decree, and not pecuniarily affected thereby, out of a spirit of pure sentiment or suspicion of possible anticipated harm indirectly flowing to them therefrom should be permitted an appeal and to stay by *supersedeas* bond the hand of the court until their collateral grievance could be heard in this court, wanting in authority to settle and adjust them when presented." (Italics ours.)

In Thomas v. Elliott, 215 Mo. 598, 114 S. W. 987, an appeal was allowed from an order setting aside a sheriff's sale in partition. The appellant was the purchaser at the sale, but not otherwise a party to the suit. In that case we said:

"But conceding that he had the right to be heard, it does not follow that he had a right to appeal from the order of the court setting aside the sale. A sale in partition is unlike an ordinary sheriff's sale under execution. It is a judicial sale; it must be reported to the court for confirmation, and until confirmed it is of no effect. [Burden v. Taylor, 124 Mo. 12.] Right of appeal is given by statute and unless the person who feels aggrieved by the action of the trial court is given the right of appeal by the statute he has no such right. The General Assembly is not compelled to give such right; it may give or withhold it as in its discretion may seem best. Whilst the person who attends a judicial sale and is the highest bidder on the property offered acquires a right to have a judicial decision of his interests, yet if the peculiar character of the proceeding is such that to allow him an appeal from the judgment of the trial court would work injustice to the parties to the suit, it is within the discretion of the General Assembly to omit him from the list of those to whom an appeal is granted."

In Shock v. Berry, 221 Mo. App. 718, 285 S. W. 122, an opinion by the Kansas City Court of Appeals, the plaintiff made the executor a party in a will contest suit. The executor answered, filed a motion for a new trial and appealed. The court said:

"In order for one to appeal he must not only be a party but he

must have an interest in the subject-matter of the suit in controversy; *in other words, he must be a party aggrieved.* . . . There is authority for holding that one is estopped to deny the interest of appellant by having made the latter a party (see 3 C. J. pp. 627-628), but this does not seem to be the rule in Missouri. . . . Whether or not an appeal is allowed by the statute, is a question of jurisdiction that cannot be waived and can be raised at any time, even by the court of its own motion."

In Othenin v. Brown, 66 Mo. App. 318, the St. Louis Court of Appeals said :-

"The fact that the appellant was made a defendant by consent, has at most a tendency to show that it has some interest in some of the property affected by the lien, but no tendency to show what that interest is, or that it extends over the entire property, or that it specifically covers lot 8. . . . There is nothing in this record to show that the appellant is a party aggrieved by such ruling."

In the case of City of Chicago v. Chicago Rapid Transit Company, 284 U. S. 577, 76 L. Ed. 501, 52 Sup. Ct. 2, the United States Supreme Court said:

"This suit was brought to restrain the Illinois Commerce Commission and the Attorney-General of the State of Illinois from enforcing an order of the commission prescribing rates of fare upon the appellee's railroads upon the ground that the order was confiscatory and in violation of the Fourteenth Amendment of the Constitution of the United States. The City of Chicago was permitted to intervene as defendant. The District Court, composed of three judges (U. S. C., Title 28, sec. 380), granted an interlocutory injunction, and on final hearing entered its decree, adjudging, upon findings, that the rates prescribed by the state commission were confiscatory and permanently restraining the enforcement of its order. The Illinois Commerce Commission and the Attorney-General of the State have not appealed from the decree, which is thus a final adjudication of the invalidity of the rate order. The present appeal is taken by the City of Chicago.

"The Court is of the opinion that the City of Chicago has no separate standing which entitles it to appeal from the decree, and its appeal is dismissed."

In the case of Chandler v. Railroad Commissioners, 141 Mass. 208, 5 N. E. 509, the Supreme Court of Massachusetts said:

"To permit a person whose only interest is that of the public generally to intervene as a party in public proceedings, when the interests of the public are represented by public officers, would require clear statutory authority. . . . A person, in the popular sense of the word, may be interested in public proceedings, or may be able to aid tribunals in determining what the public interests require, although his private rights are not affected by the proceed-

ings. . . . He (appellant) is a party aggrieved by the order of the commissioners. The rights of the public, of which he is one, are represented by selectmen of the town, and he has no private rights affected by the proceeding.''

We do not believe the cases relied upon by the relators are in point. In these cases the appeals were allowed to the sureties in suits on surety bonds or to the landowner in mechanics' lien suits brought by the subcontractors. The liabilities of both the landowner and the surety are fixed by the judgment, though they are only secondarily liable.

The judgment of the circuit court did not affect pecuniary or property rights of these relators. They were not affected by the judgment any more than any other taxpayer in Buchanan County. Costs were not even taxed against them.

III. The relators claim that inasmuch as the respondent permitted them to become parties to the proceeding in the lower court, he is estopped to question the regularity of the trial court's action in admitting them as parties. We do not agree with them. If the relators were not aggrieved by the judgment of the circuit court, they are not entitled to appeal. They must be aggrieved before the appellate court has jurisdiction. And this, a jurisdictional question, can be raised at any time even by the court itself. [Shock v. Berry, supra; State ex rel. v. Talty, supra.]

The relators having at no time the right to control the litigation on behalf of the defendant and not being proper or necessary parties, nor aggrieved by the judgment of the circuit court, therefore, the court was right in refusing appeal attempted by relators. The writ of mandamus is denied. All concur.